**THE GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**KENNETH FLEMING, Defendant**

Crim. No. 132-1972

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

June 1, 1972

MICHAEL, *Judge*

OPINION

In this case the defendant Kenneth Fleming is charged with a three-count criminal offense, as follows:

Count I. Resisting, delaying and obstructing an officer in the performance of his duty. 14 V.I.C. 1508.

Count II. Same.

Count III. Wilfully and unlawfully and not in necessary self-defense assault an officer discharging an official duty by striking him on the right shoulder. 14 V.I.C. 298.

It is noted, however, that while defendant is charged as above, no offense was filed against him for reckless driving or any other traffic offense upon which the charges are bottomed, and for which the officer claimed he intended to give him a ticket when he sped away.

██ While operating a motor vehicle in a reckless manner means its operation upon the public highway in such a manner as to indicate either a wilful or wanton disregard for the safety of person or property, driving on the sidewalk per se is not reckless driving. 20 V.I.C. 492.

130

The officer admitted that it was his belief that driving on the sidewalk was reckless driving. Even if it were, persons having business with vessels and the Immigration Office are allowed to pass on the apron.

 Notwithstanding, it is the opinion of the court that an officer does not have to have probable cause to request a driver to stop and display his license, whether or not it is his intention to give him a ticket for a traffic offense, as he may wish to ascertain whether the driver has a valid license. Consequently, for whatever reason an officer may have to stop a driver, it is his duty to stop upon his request, if such a request is properly made and understood by the driver, and to display his license. 20 V.I.C. 491(b), 371(b).

The question at issue in Count I in the case before the court is, whether the officer did make an understandable request of the defendant to reverse, as he claimed he did, and which the defendant ignored.

The evidence on this issue is conflicting, in that the officer claims that he first saw the defendant driving west to east on the apron at a rate of speed of about 30 miles per hour; that when he first saw him he was about 20 feet west and when he motioned him to stop, he stopped about 6 feet east of him. In answer to a question put to him by the court, the officer stated that there was no sound emanating from the application of brakes when the defendant stopped.

The officer further states that he signaled the defendant to reverse; that he told him he was under arrest for reckless driving, but he refused to reverse, made certain statements as to his education and other derogatory remarks and sped away.

It does not seem possible that a car travelling 30 miles per hour on a concrete surface, such as the apron is, could stop within 26 feet without audible application of brakes.

On the other hand, the defendant claims he was travelling east on the apron about 10 miles an hour with a view to

131

turning around to go to the Immigration Office to submit certain papers he received from a vessel that was tied up at the dock; that he was looking for an exit on the apron; that while so traveling, he passed the officer and stopped about 50 to 100 yards away from him; that before stopping he blew his horn to alert pedestrians who were ahead of him.

Portion of this testimony by the defendant seems to be corroborated by the officer, except that the officer's testimony was to the effect that the defendant was traveling in such a manner that the pedestrians had to hastily get out of the way.

The defendant further testified that after he stopped for the pedestrians to get out of the way, he noticed the officer making some sign from where he was, but interpreted it as a sign for him to get off the apron, which he indicated to the officer he was about to do.

The witnesses of the defendant who were in the car with him, and who admitted being friends of his, testified that on the waterfront they did not see or hear any officer speaking to the defendant, and if any officer were there, he must have been behind the vehicle and not within hearing distance.

By the testimony before the court, it cannot be found beyond a reasonable doubt that the defendant understood he was under arrest. This seems to be the case, as his testimony was to the effect that as he was unable to turn westward to go to the Immigration Office on the waterfront, he turned north on Guttets Gade with a view to returning to the Immigration Office. The court believes that if the defendant knew he was under arrest and had fled, as the officer claimed he did in his complaint, it is not reasonable to believe he would have had any immediate intention of returning to take care of the business he had at hand—

returning to the Immigration Office—having just left the officer in the vicinity.

Not being able to find beyond a reasonable doubt that the defendant wilfully resisted, delayed and obstructed the officer in his duty of issuing a traffic summons by fleeing, Count I is hereby dismissed.

■ Turning to Count II, under which the defendant is charged with refusing to accompany the officer to Fort Christian under 14 V.I.C. 1508, and of pushing the officer's hand away when he held him, the court finds that there was no prior lawful arrest. Therefore, when the officer met the defendant at the stoplight at Guttets Gade and he intended to arrest him, it was his duty to inform the defendant why he was being arrested, a question which by the evidence was asked several times by the defendant, and corroborated by the other witness for the Government, and to which the officer made no reply. 5 V.I.C. 3565(c). Having refused to inform the defendant of the charge by telling him he knew what he did, defendant had a legal right to refuse to accompany the officer to the Fort. Therefore, he was not guilty of obstructing and delaying the officer under Count II.

■ As to Count III, when defendant refused to accompany the officer, not yet having been told of the offense against him, and the officer held the defendant by his shoulder as was testified, the defendant had all right to push him away.

Where the arrest is unlawful, defendant has right to use such force as is reasonably necessary to prevent it. Kansas City v. Mathis, 409 S.W.2d 280; 5 Am.Jur.2d sec. 94, Arrest, p. 778; City of St. Louis v. Penrod, Mo. App. 332 S.W.2d 34.

Accordingly, the defendant is not guilty of Count III, and the complaint against the defendant will be dismissed.

133

Whatever force the officer subsequently used in his attempt to effectuate the arrest of the defendant, was also illegal.